CASE 46—PERSONAL INJURY ACTION BY L. J. KEIFFER
AGAINST THE LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY.—November 24.

# Louisville & N. R. R. Co. v. Keiffer

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for plaintiff.   Defendant appeals.—Re-
versed.

1. Master and Servant—Injury to Servant—Liability—What Law
Governs.—The rule that the reciprocal rights and duties of
the parties and the defenses that may be invoked to escape
liability for breach of duty are governed by the laws of the
place where the tort occurred applies to the relation of mas-
ter and servant, and the question what is, and the effect of,
contributory negligence or assumption of risk, 's determined
by the law of the place where the tort occurred.
2. Master and Servant—Injury to Servant—Liability—What, Law
Governs.—The common-law rule exempting a master from
liability for injuries to his servant occasioned by a fellow
servant's negligence, prevailing at the place where the injury
occurred and the cause of action arose, governs, though the
rule has been changed by statute at the forum.
3. Master and Servant—Injury to Servant—Liability—What Law
Governs.—An action brought in Kentucky by a citizen thereof
for an injury received in a sister state while engaged in the
performance of his duties as a servant for defendant, a
citizen of Kentucky, is governed by the laws of the sister
state.
4. Master and Servant—Injury to ℣ Servant—Negligence.—The
breaking of a knuckle on a double-header train is not actionable
simply because the train is run as a double-header, and the
reason why it is so run is immaterial, in an action by an
employe for injuries.

5. Negligence—"Proximate Cause."—The "proximate cause" of an accident is the immediate cause, or that without which it would not have happened. It is not the remote cause or the occasion of the accident, and, where the original wrong only becomes injurious because of the intervention of some distinct wrongful act of another, the injury is imputed to the last wrong as the proximate cause.

6. Master and Servant—Injury to Servant—Negligence—Proximate Cause.—A railroad engineer was injured by running into a train from the rear. The train in front was run as a double-header because of the leaky condition of one of the engines, and as it pulled out of a station a knuckle broke. While an emergency knuckle was being put on, the engineer ran into the train. Had proper signals been given him, he would have stopped his train before the collision, provided he did not run at an excessive speed. Held, as a matter of law, that the leaky engine was not the proximate cause of the injury.

7. Negligence—Proximate Cause—Question for Jury—Question for Court.—Where there is room for a difference of opinion between reasonable men as to what is the proximate cause of an injury, the question is for the jury; but, where there is no room for a difference of opinion, the question, where the facts are undisputed, is for the court.

8. Master and Servant—Injury to Servant——Incompetency of Fellow Servants—Evidence.—A railroad engineer ran into a standing train from the rear. The flagman of the leading train was negligent in not starting back in time to flag the engineer, and the conductor was also negligent in not sending the flagman back in time. Witnesses testified that the flagman was, in their opinion, not competent; but they did not show in what respects he was incompetent, or that knowledge of the incompetency had been brought home to the company. The flagman had stood his examination and had been in the service of the company for 15 months. Held, as a matter of law, not to show the incompetency of the flagman.

BENJAMIN D. WARFIELD and SIMS, DU BOSE & RHODES for appellant.

PROCTER & HERDMAN, WRIGHT & McELROY and GREEN & VAN WINKLE for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

L. J. Keiffer was the engineer on train 111, which left Bowling Green for the South on August 19, 1904. The second and third sections of train 115 had left Bowling Green that afternoon several hours before Keiffer's train. One of the sections had a leaky engine, and by reason thereof this section lost time. At Erin, Tenn., an order was given these two sections to consolidate and run as a double-header from that point to Paris, Tenn. Keiffer there received an order to follow train 115 to Paris; the order informing him of the consolidation of the two sections, but not informing him why it had been done. Train 115 left Erin shortly before 12 o'clock at night, and Keiffer had to wait there until the hill engine returned to pull his train over the hill, as well as for a passenger train which had the right of way. Train 115 ran from Erin to Big Sandy, a distance of 23 miles, without further trouble from the leaky engine after it passed over the hill near Erin. It stopped at Big Sandy to take water. One of the engines took water. It then backed up for the other engine to take water and started out, but as it pulled out, a knuckle broke about the twelfth car back from the engine. There were 29 cars in the train. They undertook to mend the knuckle, but could not do it. Then they undertook to put in an emergency knuckle, and, while they were doing this, Keiffer's train ran into them from the rear, about 3:30 a. m. He had left Erin about 2:30 a. m., and, according to the time of train 115, it should have been at Paris, and would have been there, perhaps, but for the breaking of the knuckle, which had

delayed them at Big Sandy 10 or 15 minutes.

The proof as to the cause of the collision is conflicting. The evidence for Keiffer is, in effect, that the men on train 115 gave him no warning of its presence on the track until he was within a few feet of it, and it was then too late for him to avoid the collision. The evidence for the railroad company is to the effect that Keiffer was running 25 or 30 miles an hour, when, under the rules, he should have been running only 12 miles an hour, and that timely warning of the presence of train 115 on the track was given him, if he had been running at the proper speed. The rules required that train 115 should send a flagman back something over a quarter of a mile, and that he should give warning by placing torpedoes on the track, as well as by a light. This, it is conceded, was not done. The proof for the railroad is that the flagman went back about 200 yards, while Keiffer says he was less than 100 feet from the back of the train. By the collision, Keiffer's engine ran through both cabooses, a car load of flour which was standing in front of them, and knocked the end out of the car beyond the one containing the flour. The engine turned over and caught Keiffer under it. He was badly mashed and bruised, and brought this action to recover for his injuries. On a trial of the case in the circuit court, he recovered a verdict and judgment for $25,000, and the railroad company appeals.

The action having occurred in the state of Tennessee, the defendant pleaded the law of that state in bar of a recovery. By the law of Tennessee the contributory negligence of the injured employe of a railroad company bars his right of recovery, where it is either the proximate cause of the accident or directly and materially contributes thereto. On the

other hand, if the negligence of the injured servant was neither the proximate cause of the accident, nor directly or materially contributed thereto, but only indirectly and remotely contributed to bring about the accident, such negligence would not bar a recovery, but would only mitigate the damages. By the law of Tennessee, also, the men on one train in the service of the railroad are fellow servants of the men on another train, and no recovery can be had by one for an injury due to the negligence of the other. This was so declared by the Supreme Court of Tennessee in L. & N. R. R. Co. v. Dillard, 114 Tenn. 240, 86 S. W. 313, 69 L. R. A. 746, 108 Am. St. Rep. 894, and, although that case was decided after this injury occurred, it merely declared the law; the court simply holding that the law as thus declared had always been the law of Tennessee, and there being no statute governing the question. As to what is the law in Tennessee there is no conflict in the evidence; the witnesses introduced both by the plaintiff and the defendant agreeing as to what the law is in that state.

But it is insisted that, as the railroad company is a citizen of Kentucky, and as Keiffer is also a citizen of Kentucky, the courts of this state should administer its own laws as between its own citizens. It is not material where the parties reside. When the injury was done in Tennessee, a cause of action arose there. The rights of the parties as they then were cannot be affected by the fact that the suit was not brought there, but in this state, for the courts of this state, simply enforce the cause of action which plaintiff has. In 2 Wharton on the Conflict of Laws, section 478b, the rule is thus stated: "The reciprocal rights and duties of the parties and the defenses that

may be invoked to escape liability for a breach of duty are governed by the law of the place where the tort occurred, rather than by the law of the forum. This principle has been applied, inter alia, to the reciprocal rights and duties of master and servant and of carrier and passenger. So the question as to what constitutes, and the effect of, contributory negli-gence, or assumption of risk, to defeat or limit the right of action for the negligent killing or injury of a person, is to be determined by the law of the place where the tort occurred, and not by the law of the forum. And the common-law rule exempting the master from liability for injuries to his servant by a fellow servant's negligence, prevailing at the place where the injury occurred and the cause of action arose, will govern, although the rule has been changed by statute at the forum." See, also, Cooley on Torts (2d Ed.) p. 552; I. C. R. R. Co. v. Jordan, 117 Ky. 512, 78 S. W. 426; L & N. R. R Co. v. Melton, 105 S. W. 366, 32 Ky. Law Rep. 51, and the cases cited. This court has in a number of cases enforced liability on the part of the master under the laws of a foreign state, although by the laws of this state no right of action existed, upon the ground that, if the act was actionable where it occurred, it was actionable every-where. Manifestly the converse of the doctrine must be true, and, if the act was not actionable under the common law of the state where it occurred, it is not actionable anywhere. The rule must be the same both for the plaintiff and the defendant, and it is imma-terial whether the parties live in this state or else-where. The residence of the party in no wise affects the cause of action.

Keiffer, as ground for recovery, insists that the leaky engine was the proximate cause of his injury,

and that, the master having furnished an engine which was not reasonably safe, he may recover. He also insists that Veazie, the flagman of train 115, was incompetent, and that he may recover for the incompetency of Veazie, although he may not recover for his negligence. The circuit court did not submit the latter question to the jury, but he submitted the case to them on the question whether the leaky engine was the proximate cause of Keiffer's injury. The defendant insists that he should have instructed the jury peremptorily to find for it, and this is the only question we find it necessary to consider.

It is manifest from the proof that the leaky engine gave no trouble after the train passed over the hill near Erin, an hour or more before the injury. It is also manifest from the proof that train 115 would not have been at Big Sandy when Keiffer got there but for the breaking of the knuckle. It is further manifest from the proof that, after all this had occurred, if train 115 had given the signals as required by the rules, Keiffer's train would have been stopped before any injury was done. If the defendant's proof is true, ample notice of the presence of train 115 on the track was given to Keiffer, and the accident was due either to his not heeding the signals, or not seeing them in time, or his running into the station at a speed forbidden by the rules, while the proof for him shows that he was complying with the rules, and that the signals were not given in time. However this may be, the proximate cause of the injury was not the leaky engine, nor even the breaking of the knuckle, but it was either the failure of the men on train 115 to give proper signals, or the failure of Keiffer to obey the signals. The accident could not possibly have occurred if Keiffer had been running

at the speed required by the rules and the signals had been given as required by them, for manifestly Keiffer could have stopped his train in this event long before he reached the other train. It is said that the leaky engine was the proximate cause of the knuckle breaking, as but for the leaky engine the train would not have been doubled into one section, and, perhaps, the knuckle would not have broken but for the weight of all the cars. No negligence on the part of the defendant is shown in regard to the breaking of the knuckle. Double-headers are run on all railroads, the breaking of a knuckle on a double-header train is not actionable, simply because the train is run as a double-header, and the reason why it is so run is immaterial. The defendant having the right to run a double-header train, its reasons for exercising its right can furnish no cause of action. But aside from this, as we have said, the proximate cause of this accident was either the failure to give Keiffer the proper signals, or his failure to observe them and run at a proper speed. The proximate cause of an accident is the immediate cause, or that without which it would not have happened. It is not the remote cause of the accident, or the occasion of it. In Cooley on Torts, section 70, the rule is thus stated: "If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission of another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." See, also, Thompson on Negligence, section 47; Shearman and Redfield on Negligence, section 31; Setter's Adm'r v. City of Maysville, 114 Ky. 60, 69 S. W. 1074. It is also true that, where there is room for a difference of opinion between reasonable men as to what is the proximate cause of an injury, the ques-

tion is for the jury; but where there is no room for
difference of opinion, under the rules of law, the
question, where the facts are undisputed, is one of
law for the court. As a matter of law, it must be
held here that the leaky engine was not the proxi-
mate cause of Keiffer's injury, for manifestly, if train
115 had stopped as it did because of a flood in front
of it, and train 111 had run into it because by negli-
gence either proper signals were not given it, or those
given were not heeded, the flood in front would not
have been the proximate cause of the collision.

It remains to consider whether the case should
have been submitted to the jury on the incompetency
of Veazie, the flagman. The plaintiff introduced
several witnesses, who testified that they had run with
Veazie and had seen him at work, and that in their
opinion he was not competent; but none of them
showed in what respects he was incompetent, or that
knowledge of his incompetency had been in any way
brought home to the master, or that any complaint
had been made of him which would put the master on
notice of his incompetency. It was shown that he had
stood the examinations and had been in the service
of the railroad as a brakeman for some fifteen months.
The thing that he was required to do was to go back
behind his train a certain distance and there flag
train 111. What actually happened, according to all
the proof, was that he did not start back until they
heard train 111 coming, and, before he had gotten
half as far back as he should have been, according to
his own evidence, train 111 passed him. Any man can
walk down a railroad track. Any man can carry a
lantern, or put a torpedo on the track, or light a fuse.
The trouble with Veazie was that he did not start
back in time. His failure to start back in time was

due to his negligence in discharging his duty. The conductor was also negligent, for he was with the flagman and should have sent him back. To submit the case to the jury on these facts, on the question of Veazie's incompetency, would be to shut our eyes to the truth, and to call negligence incompetency. That the train crew of 115 were negligent is conceded in the evidence. There was negligence on the part of the conductor in not sending his flagman out, and there was negligence on the part of the flagman in not going out. There was no proof in the record that Veazie was not thoroughly competent to do everything he was required to do under the rules at the time. He knew what he ought to do as well as any one, but he simply neglected his duty.

On the whole case, we conclude that the court should have instructed the jury peremptorily to find for the defendant. This conclusion makes it unnecessary for us to consider the other questions discussed by counsel.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

Nunn, J., dissents. Settle J., not sitting.