### Griffin v. Chesapeake & Ohio Railway Company.

(Decided April 18, 1916.)

### Appeal from Lewis Circuit Court.

1. Railroads—Lookout Duty.—Persons in charge of an engine are not required to keep a lookout on premises or roads adjacent to the track to discover whether or not horses are being frightened, and are only under duty to prevent noises that may further frighten a horse after they have discovered his fright.

2. Damages—Injury as Result of Violation of Statute.—One injured by the violation of a statute may recover from the offender for such damages as are the direct and proximate result of such violation.

3. Railroads—Blocking Crossing—Section 768 Ky. Stats.—Blocking of crossing for more than five minutes, a violation of section 768 of our statutes, held under the proof in this case not to have been the proximate cause of a team running away.

ALLAN D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE CLARKE.—Affirming.

In December, 1910, appellant was taking some packages of evergreens on a sled, drawn by a horse and a mule, to the depot of appellee at Garrison, Kentucky, for shipment to Washington, D. C. To reach the depot he had to cross the railroad track, but when he got to the crossing, it was obstructed by a freight train. Upon being informed that the crossing would be obstructed for some time, probably half an hour, he let down some fences and drove through the fields along the side of the railroad track to a point opposite the depot where he stopped and began unloading the sled with the intention of carrying the packages, which were light, across the track to the depot.

The engine of a freight train was almost directly between him and the depot and about twenty feet from the team where it was stopped, and the ground where the team was standing was some six or eight feet higher than the railroad track.

Soon after the team was stopped at this place, the engine was cut loose from the freight train and started up the track to switch some cars. When the engine started up the team became frightened and it required both the appellant and Mr. Garrison, who was helping him unload the sled, to hold and quiet the animals. After the engine had gone away, Mr. Garrison began again to unload the sled while appellant held the lines to control the team.

In a short time, and about the time the packages had been removed from the sled, the engine came backing down the track to couple to the train, when appellant's horses again became frightened, and ran away, upset the sled and injured appellant.

To recover for his injuries he brought this suit, alleging that his injuries were caused by the gross negligence of appellee's servants in permitting the crossing to remain blocked an unreasonable length of time and by said servants carelessly and negligently causing and permitting the engine of said train to emit violent and unusual noises, and to move in such a manner as to frighten his horses and cause them to become unmanageable.

Appellant and Mr. Garrison testified that there were two men in the engine, presumably the engineer and the fireman, one of whom had his face turned in their direction and could have seen that appellant's horses were

frightened by the starting of the engine, and that the engine when it started puffed, "popped off" steam and made a noise caused by the stop cocks being open; that engines do not ordinarily have the stop cocks open; that as the engine came back from the switch track and when it was about ninety feet distant from the team, the team began to scare again, appellant threw up his hands and hollowed to the man in charge of the engine to stop until he could get out with his team; that the engine did not stop but continued to come back making considerable noise as though the stop cocks were open and blowing off steam.

Appellant testifies that as the engine came back he saw one of the engine men looking in his direction, which was the direction in which the engine was moving, and that he could have seen that the animals had become frightened at the engine's approach.

At the close of appellant's proof, the jury was directed to return a verdict in favor of appellee and appellant's petition was dismissed.

Appellant contends that the place where he stopped the team was on appellee's right of way, while appellee claims that it was on a public street, as stated by appellant's witness Garrison, and we think the testimony sustains the latter contention. This is not, however, in our judgment, material since it is conclusively shown that the place was not one to which shippers were invited or accustomed to be, nor where trainmen were bound to anticipate the presence of teams or in reference to which any duty of lookout was imposed. In order to reach this place appellant had to let down fences and drive through fields. It was not on the same side of the tracks as the depot and it was up on an embankment where there was no reason why any employe of the company need ever look.

Appellant seeks to apply the doctrine applicable to persons upon the grounds of a railroad company by invitation to transact business, but the facts of his case do not justify it. Even if he was at the time upon the edge of appellee's right of way, he was a trespasser.

He certainly was not invited to that place by the company, and the case of Ill. Cent. R. Co. v. Beauchamp, 77 S. W. 1096, and C., N. O. & T. P. R. Co. v. Rodes, 102 S. W. 321, cited by his counsel, are not applicable to the case at bar. While the railroad company invites the pub-

lic to come to its depot for the transaction of business, that invitation and its resulting duties only extend to the places used for the transaction of such business and does not extend to other places upon the company's premises, unless by special direction.

Having reached the conclusion that appellant was not upon the premises of appellee by invitation, but was either a trespasser, if upon the premises at all, or more probably upon a public street or premises adjacent to the company's right of way, it results that the duty owed to him by the trainmen consisted in simply doing whatever they reasonably could to avoid further frightening the team after discovering, if they did so, that it was frightened and the appellant in peril. In Cox v. Ill. Cent. R. Co., 142 Ky. 478, where the facts are not different in principle from those in the instant case, this court said:

"The persons in charge of an engine are not required to keep a lookout on premises or roads adjacent to the track for the purpose of discovering whether or not horses are being frightened by the train or engine, and are only under duty to prevent frightening a horse after they have discovered his fright."

And in the case of L. & N. R. Co. v. Street's Admr., 139 Ky. 186, this court said:

"It is not customary, nor is it reasonable, to require the train operatives to keep a lookout upon the adjacent highway to see if a horse thereon is frightened, or likely to be, and thereupon to stop his train. Nor is it the law that they must do so. No case to which we have been cited so holds. The utmost requirement is the trainman must operate his own vehicle without unusual or unnecessary noise, and, perhaps, if he actually becomes aware of the fright of the horse, to be even more cautious in the making of noises in operating his train. But if he were also required to use care to discover horses and their state of trepidation out on the highway some rods away from his track, it would so distract his attention from his necessary duties as probably to imperil more lives and property, including his own life, and more than offset any advantage to the public by requiring him to keep such lookout. It is for that reason, and not from indifference toward the driver of the horse, that the law has never exacted such a degree of care from the trainmen."

To the same effect are the following cases: L. & N. R. Co. v. Smith, 107 Ky. 178; C., N. O. & T. P. R. Co. v. Bagby, 29 S. W. 320; L. & N. R. Co. v. Bowen, 39 S. W. 31; Conway v. L. & N. R. Co., 135 Ky. 229; C. & O. R. Co. v. Barbour's Admr., 93 S. W. 24.

It was necessary therefore for appellant to prove in order to make out his case: (1) that his perilous condition was discovered by the trainmen: (2) that thereafter they failed to use ordinary care to prevent the engine from making unnecessary noises.

Upon the first question we do not think the evidence was sufficient to carry the case to the jury. It consists of the statement that one of the trainmen at some time after appellant drove up to the place and before the engine went up the track to do the switching, was looking in the direction of the team, but the witness did not say whether or not this was while the team was showing fright; and, even if the trainman had then seen the team was frightened, the accident did not occur then, and that fact would not have put him on his guard when returning to that place some five or ten minutes afterwards, after having been some 600 or 800 feet up the track switching some cars; so we may dismiss the evidence with reference to what happened before the engine left to do the switching.

When the engine returned to again couple on to the freight train, and was backing toward appellant, the evidence of appellant and Mr. Garrison is that the men in the engine were looking in the direction of appellant, which was the direction in which the engine was moving, but it does not seem to us that that fact would warrant an inference that they saw appellant twenty feet away from the track and upon an embankment some six or eight feet high, but rather the inference that they were watching the track and the train so as to make the coupling with safety, especially as it was about dusk. Under the circumstances here a very different condition exists from a case such as Willis' Admr. v. L. & N. R. Co., 164 Ky. 131, cited by appellant, where it was held that evidence that the engineer was looking in the direction of one upon the track in a perilous condition was sufficient to take the case to the jury. The fact that an engineer was looking in the direction of one in a perilous position upon the track in front of him might very reasonably raise the presumption that the engineer saw the

person so situated. Such, however, is not the rule with reference to persons and objects not upon the track. Nor does the fact that appellant, located where he was, hollowed to the engineer to stop the engine when it was 90 or 100 feet from him supply an inference that the engineer heard him and thereby received information of his peril. McKnight v. L. & N. R. Co., 168 Ky. 86.

However, if we admit for the sake of argument that there was some evidence tending to prove that the servants in charge of the engine discovered appellant's peril, there is no evidence that there was anything they could have done thereafter to have prevented the accident to appellant.

Appellant's testimony is that immediately after he threw up his hands and hollowed, and before he even had time to get off of the sled, the team ran away and the accident occurred. The conclusion is unavoidable that the accident would have occurred anyhow, even if the train had been stopped as quickly as possible, and everything done that could have been done to suppress noises incident to the operation of an engine. Moreover, it is not shown that the engine was making any unreasonable or unnecessary noises, or any noise other than such as are incident and necessary to its operation, unless it can be said having the stop cocks open, as it is stated they were, caused some unreasonable or unnecessary noise, which does not appear from the evidence. If the engine was "popping off" steam as alleged by the witness, it was because of the fact that there was an excess of steam in the boiler, and stopping the engine would not have prevented that noise continuing.

It results that appellant failed to show any negligence upon the part of appellee's agents in the operation of the engine that caused the accident.

2. Appellant also contends that the blocking of the crossing for an unreasonable length of time was the proximate cause of the accident, but he is not supported in this contention by the authorities. In the first place it was not necessary, even if the crossing was unreasonably blocked, for appellant to have stopped his team where he did, as the evidence shows he could have reached the depot by going to another crossing with but little inconvenience. And while one injured by the violation of a statute, and it is in violation of section 768 of our statutes to block a crossing continuously for more than five min-

utes, may recover from the offender, it is only for such damages as are the direct and proximate result of the violation of the statute. L. & N. R. Co. v. Cooper, 164 Ky. 489.

But the blocking of the crossing was not the direct or proximate cause of the accident here. The proximate cause was the movement of the train that ought to have been anticipated by appellant when he stopped his team where he did, and the blocking the crossing was at most simply a prior or remote cause that did no more than furnish the condition which made the accident possible. Setter's Admr. v. City of Maysville, 114 Ky. 60; Burton v. Cumberland T. & T. Co., 118 S. W. 287; L. & N. R. Co. v. Keiffer, 113 S. W. 433, 132 Ky. 419; Logan v. C., N. O. & T. P. R. Co., 139 Ky. 202; Georgetown Tel. Co. v. McCullough's Admr., 129 S. W. 575, 29 Cyc. 496.

Wherefore the judgment sustaining a motion for a peremptory instruction is affirmed.