CASE 100—ACTION BY S. S. ROBERTSON AGAINST THE CINCINNATI, N.
O. & T. P. RY. CO. FOR PERSONAL INJURIES.—JUNE 10.

# Cincinnati, N. O. & T. P. Ry. Co. v. Robertson.

APPEAL FROM MERCER CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

MASTER AND SERVANT—INJURIES—LIABILITY OF FOREMAN—REMOVAL
TO FEDERAL COURT.

Held:   1. In an action by a locomotive engineer against the rail-
road company and a general foreman employed to repair en-
gines for personal injuries caused by the bursting of a "sight
tube," plaintiff alleged that it was the duty of the foreman to
see that proper tubes were furnished, and that they were pro-
vided with metal shields, and that the foreman had promised to
provide such a shield. It was further alleged that it was the
duty of the company to furnish shields and tubes of safe ma-
terial, and that the tubes furnished by the company were not
of good material, but were defective, and that this fact could,
with reasonable diligence, have been known to the railroad com-
pany and to the foreman. It was not alleged that any other
variety of tubes than the one used was furnished the foreman,
or that he was supplied with metal shields for the tubes. HELD,
that no cause of action was stated against the foreman personally.
2. The railroad company being the only defendant against whom a
cause of action was stated, and being a citizen of another State,
the cause was removable to the Federal court.

GAITHER & VANARSDALL AND JOHN GALVIN, FOR APPELLANT.

W. C. BELL AND ROBT. HARDING, FOR APPELLEE.

The record having been transferred to the United States Cir-
cuit Court, there are no briefs in this court.—REPORTER.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING AND TRANS-
FERING TO THE FEDERAL COURT.

Appellee, Robertson, was a locomotive engineer in appel-
lant's employ. One Dennis Brown was general foreman for
appellant. He had charge of the roundhouse at Somerset,
Ky., an end of a division on appellant's road. Brown was

a citizen of Kentucky. It was his duty to direct the repair of such engines coming into that roundhouse as needed repairs, to see to their proper equipment. He was a superior servant to appellee. This suit was brought by appellee against appellant and Dennis Brown to recover for the injury to appellee's eye by the bursting of a glass tube, which was a part of the machinery of a lubricator on the locomotive which was in his charge. The negligence complained of was that the glass tube was of an unsafe material, and that it was not properly protected by a metal shield, necessary for that purpose. This tube is called a "sight tube," and is necessarily of glass, because the engineman must know that his engine is being properly oiled, and can only know this by seeing the oil as it passes through the water, drop at a time. This tube through which the oil passes is held in place by means of screws at the top and bottom of the tube. The screws do not press directly against the glass, but upon rubber gaskets that go around the tube. The steam that heats the oil and forces it into the tubes is taken directly from the boiler. Consequently, the tubes are liable to high pressure of steam. The tube being liable from various causes to be broken, a shield is provided that can be fitted around this glass, and furnishes protection both to the glass itself and to the engineman in case the glass should break.

The petition is brought in two paragraphs. The first charges that it was the duty of the company to furnish shields for the glass tubes, and that Brown was required by the company to see that the tubes were furnished; that Brown was in a different and superior class of service from appellee, and that appellee was an engineer. Appellee further alleges that Brown had promised him to have the shields placed upon the engine, but had failed to do so, and

that appellee, relying upon this promise, continued in the use of the engine; and that while upon the engine, after this promise, the tube burst, and a portion of it flew into appellee's eye, causing the injury; and that, except for the absence of the shield, it could not have happened. The second paragraph avers that it was the duty of the company to furnish safe material, and that Brown was required by the company to see that safe material was furnished; that the glass tubes furnished by the company were not of good material, but were defective; and that this fact was, or with reasonable diligence could have been, known to the company and to Brown, but that it was not known to appellee; and that by reason of unsafe and defective material in the tube it burst, and caused the accident. The appellant filed a motion to remove the case to the United States court. This motion the court overruled.

The petition nowhere avers that Brown was supplied by the master with any other or better tube than the one actually furnished to appellee; nor that Brown was supplied at all with a shield or shields by the master, so that he could in turn furnish them to the enginemen. This is not wholly a technical criticism of the pleading. The facts developed upon the trial were that in fact Brown furnished to appellee precisely the tubes that he was provided with by the master, and that he had not any shield provided him by the master. So that the question comes to this point: Can a servant be made liable to one of another grade for the master's failure to provide safe and suitable machinery, although it was the superior servant's duty to look after the condition of the machinery? For such servant's careless or negligent act, which is called a "misfeasance," he is liable to any one injured thereby. In its nature it is or becomes a trespass. And the fact that he is acting for an-

other, or even under the positive directions of another, will not excuse him. But where the injury results to some third person because the servant failed to act—that is, because of his nonfeasance—it is held upon authority that generally the servant is not personally liable, though his master is. Lane v. Cotton, 12 Mod., 472; Murray v. Usher, 117 N. Y., 542, 23 N. E., 564; Henshaw v. Noble, 7 Ohio St., 226; Burns v. Pethcal, 75 Hun., 442, 27 N. Y., Supp., 499, and cases therein cited. Whether this doctrine, in its fullest extent, can be sustained in sound reason, it is unnecessary for us to examine. Whether the nonfeasance of Brown was a negative act, in that it was a failure to do what he had undertaken to do, and therefore had done it imperfectly, we are relieved from considering by the state of the pleadings and of the record; for it is not charged that Brown had it in his power to do anything other than exactly what he did. To hold him liable in this state of case would be to hold that every servant is personally charged with the same liability as his master, although the sole fault was that of the master, over whose action the servant, of course, had no control. Such a rule would be unreasonable. Its obvious injustice necessarily condemns it, and makes it impossible of acceptance. The allegation that Brown agreed to appellee to furnish the shield can add nothing to Brown's legal liability or duty to appellee. Without other necessary averments showing at least that Brown had it in his power by the master's having supplied him with appropriate appliances, so that he could do that which it is alleged he ought to have done and agreed to do, his agreement was *nudum pactum*. Really, the office of the allegation concerning the agreement was not to create a liability against Brown that did not exist before, but was to excuse appel-

lee in the use for a reasonable time of a known, patently defective piece of machinery.

The petition having failed to show any cause of action against Brown, or, so far as it stated anything, showed that he was not liable personally to appellee, the averments regarding his alleged liability and seeking to hold him personally responsible should have been disregarded as surplusage. This would have left but one real defendant sued, namely, the appellant, and, as the controversy was then wholly between a citizen of Kentucky and one of another State, and the amount in controversy more than $2,000, the petition for removal of the action into the Circuit Court of the United States should have been granted as a matter of right, a sufficient bond having been tendered and approved.

Having arrived at this conclusion, and as the case will have to be tried in another forum, it is unnecessary, as well as improper, for us to discuss the questions arising upon the trial in the circuit court.

The judgment is reversed, and cause remanded, with directions to remove this cause to the United States Circuit Court for the Eastern District of Kentucky.

The whole court sitting.