FILOMENA MIGLIACCIO, ADMINISTRATRIX AD PROSE-QUENDUM OF THE ESTATE OF FERDINAND MIGILAC-CIO, RESPONDENT, v. PUBLIC SERVICE RAILWAY COMPANY, APPELLANT.

Submitted November 6, 1925—Decided August 13, 1925.

1. In order to charge a wrong-doer for damages, it must appear that they were the natural and proximate effects of his delinquency.

2. Plaintiff's intestate was injured in a collision between an automobile, in which he was riding as a passenger, and a car of the defendant.  More than a year after the accident he contracted tuberculosis, from which he died three months later.  At the trial it was contended that the accident caused a lowering of the vitality of the decedent, by which he more readily contracted the disease from which his death resulted, and expert testimony was given to that effect.  *Held*, that assuming that the deceased

became infected with tuberculosis because of lowered vitality, due to the accident, such a result could not reasonably have been foreseen, and was not the natural and probable consequence of the wrongful act of the defendant; and further, that to enable the plaintiff to recover, it was necessary to exclude the idea that the death of the decedent was due to a cause with which the defendant was unconnected, which the plaintiff failed to do.

On appeal from the Hudson County Court of Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the appellant, *Leonard J. Tynan*.

For the respondent, *Feinberg & Feinberg (Alfred Brenner,* of counsel).

The opinion of the court was delivered by

KATZENBACH, J. This suit was instituted in the Hudson County Court of Common Pleas under the Death act to recover damages for the death, by wrongful act, of Ferdinand Migliaccio. On January 4th, 1920, Migliaccio was a passenger in the automobile of his brother-in-law, Jacob Pepe. Pepe was driving the car on Twentieth street, in the city of Bayonne. At the corner of Twentieth street and Avenue C, the automobile collided with a car of the Public Service Railway Company. Migliaccio was injured by the contact. His injuries consisted of a scalp wound, contusions upon the chest, back and extremities, and an internal injury to the liver, or spleen, or both. He was taken to the hospital, where he remained for three weeks. He then went to his home. For two or three months thereafter he was up and about a part of each day. The balance of the day he remained in bed. He then engaged in work as an assistant in an undertaking establishment. He died on April 20th, 1921, of pulmonary tuberculosis. The symptoms of this disease did not appear until three months before his death, and more than a

year after the accident. A short time prior to the accident he had been examined for admission to a lodge which paid death benefits, and the examination showed no trace of the disease which caused his death.

It was not contended that the death of Migliaccio was directly due to the accident, but that the accident caused a lowering of his vitality by which he more readily contracted the tuberculosis from which his death resulted.

The plaintiff offered evidence regarding the accident which made the question of the defendant's negligence a jury question. There was also evidence offered from which it could be inferred that Migliaccio was not in as good health after the accident as he had been prior thereto. The plaintiff then sought, by expert testimony of physicians, to prove that tuberculosis is caused by germ infection, and that it was reasonably probable that the accident to Migliaccio lowered his vitality to such an extent that he became infected with the tuberculosis germ which developed the pulmonary tuberculosis from which he died. At the conclusion of the plaintiff's case a motion to nonsuit was made and overruled. One of the grounds upon which the motion was based was that the pulmonary tuberculosis which caused the deceased's death was not the natural and proximate result of the accident.

The defendant introduced medical testimony to the effect that there was no causal relationship between the primary injury and the tuberculosis which caused the death of Migliaccio. At the conclusion of the defendant's testimony a motion to direct a verdict was made and overruled. The grounds for this motion were the same as those advanced on the motion to nonsuit. The trial court submitted the case to the jury, which returned a verdict in favor of the defendant, Pepe, and a verdict for the plaintiff against the defendant, Public Service Railway Company, for $18,500. A rule to show cause was allowed by the trial judge. The rule reserved the exceptions taken at the trial. The only question argued under the rule was as to whether the damages were excessive. The rule was discharged. The Public Service Rail-

way Company has appealed the judgment to this court. It now argues the exceptions reserved under the rule.

The first ground of appeal argued by the appellant is the refusal of the court to either direct a verdict for the defendant or to nonsuit the plaintiff upon the ground that the death of the deceased was not the natural and proximate result of the accident. The question of proximate cause in negilgence cases presents as delicate a question as exists in the law. It is difficult to lay down any general rules which will act as a guide in all cases, as much depends upon the facts of the individual cases. It is necessary for a plaintiff, in order to recover, to prove that the defendant did an act or omitted to do an act which a person of ordinary prudence could foresee might naturally and probably produce the injury complained of; and that such act or omission did actually cause the injury. In many cases, perhaps the majority of cases, the inquiry turns upon the question as to whether there exists an intervening cause efficient in itself to produce the injury complained of. But it is as necessary for the plaintiff to establish the fact that the injury is one which might have been reasonably anticipated by the wrong-doer as it is to show that there was no other intervening cause efficient in itself to work the injury complained of. Anticipation is an essential element of proximate cause.

Of the text writers, Cooley, in his work on *Torts* (third edition, page 73), best expounds the principle. He uses the following language taken from *Add. Torts:* "If the wrong and the resulting damage are not known by common experience to be natural and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

In the case of *Cole* v. *German Savings and Loan Asso.,* 124 *Fed. Rep.* 113. Circuit Judge Sanborn defined a probable cause as one that is more likely to follow its supposed cause than it is to fail to follow it. In the citations supporting this

doctrine he refers to the leading case of *Milwaukee and St. Paul Railroad Co.* v. *Kellogg,* 94 *U. S.* 469, where Mr. Justice Strong laid down the principle in the following terms: "It is generally held that, in order to warrant a finding that negligence, or an act not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." In our own state, Mr. Justice Dixon said, in *Wiley* v. *West Jersey Railroad Co.,* 44 *N. J. L.* 247: "The law requires that the damages chargeable to a wrong-doer must be shown to be the natural and proximate effects of his delinquency. The term 'natural' imports that they are such as might reasonably have been foreseen and such as occur in an ordinary state of things; the term 'proximate' indicates that there must be no other culpable and efficient agency intervening between the defendant's dereliction and the loss."

There are a number of other cases which might be referred to, but the above will suffice to explain the principle to which attention is called. Let us test the present case by these rules. The deceased died from pulmonary tuberculosis fifteen months after the accident. No symptoms of the disease from which he died appeared for over twelve months after the accident. Assuming that the deceased became infected with the tuberculosis germ because of a lowered vitality due to the accident, can it be said that such a situation or result could reasonably have been foreseen, or that it was the natural and probable consequence of the wrongful act? We think not. Such a result of the accident could not have been reasonably anticipated. The death of the injured man from tuberculosis, where the tuberculosis was not brought about by the accident itself, that is, as the result of a direct blow or injury to the lungs, is not a consequence that is more likely to follow its supposed cause than it is to fail to follow it. It may seem somewhat strange to say that death resulting from a direct injury to the lungs by accident is a natural and proximate

result which could be reasonably foreseen and anticipated, but that death from tuberculosis, brought about as the result of a lowered vitality due to the accident, is not a consequence which could be anticipated. The answer to this distinction is perhaps best given by calling attention to another duty cast upon a plaintiff in an action such as the present. It is incumbent upon the plaintiff to exclude the idea that death was due to a cause with which the defendant was unconnected. This is pointed out in the opinion of the present Chief Justice in the case of *Suburban Electric Co.* v. *Nugent*, 58 *N. J. L.* 658 (a death case), in which he said: "It must be conceded that the plaintiff below was bound to show something more than that the defendant was possibly responsible for the decedent's death in order to entitle him to a verdict. It was incumbent upon him, in the absence of direct evidence of that fact, to show not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the death was caused by the wrongful act of the defendant, and would exclude the idea that it was due to a cause with which the defendant was unconnected." This the plaintiff failed to do. Tuberculosis was admittedly a germ disease. The deceased did not have it at the time of the accident. The first symptoms appeared three months prior to the death and more than a year after the accident. During this period the deceased worked as an assistant embalmer in an undertaking establishment, where he probably came in contact with the bodies of those who had died of tuberculosis. The testimony further showed that during this period the deceased was seen riding on the hearse, standing for an hour in slushy weather with his hat off, shoveling snow and coal. Under such circumstances persons who have never been injured have contracted pulmonary tuberculosis. Any one of the acts mentioned might have caused the contraction of the fatal disease had no accident occurred.

We think the plaintiff failed to exclude in his testimony the idea that death was due to a cause with which the de-

fendant was unconnected. To permit the recovery of a judgment upon the testimony of the present case would be to permit a jury's guess or speculation to deprive a defendant of its property. Such a result can only be obtained by a logical deduction from proven facts. To hold otherwise would throw wide open the door of recovery in many cases where illness and death have occurred long after an injury has been inflicted upon the theory that the illness would not have taken place if the person's vitality had not been lowered as a result of the accident. Physicians may be honest in being willing to testify that the illness would probably not have resulted if the injury had not occurred. But it is impossible for such an opinion to be much more than a guess because in no case would it be possible to frame a hypothetical question which would embody all the facts relative to the person of whom it is asked. No person knows to what diseases he may be subjected to in a day's travel or business. It may be that the application of the principles above enunciated may in the present case seem harsh, but the letting down of the bars and departing from settled and well-established principles always results in worse evils.

In the present case we see no testimony which establishes a causal connection between the injury and death. In this state of the testimony it was error to have failed to either grant the motion to nonsuit or direct a verdict for the defendant.

The judgment is reversed, with costs.