MINNIE FITZGERALD, RESPONDENT, v. FISHER BODY ST. LOUIS COMPANY, KANSAS CITY DIVISION, AND ROYAL INDEMNITY COMPANY, APPELLANTS.—130 S. W. (2d) 975.

Kansas City Court of Appeals.   May 29, 1939.

*Morrison, Nugent, Berger, Byers & Johns* and *Douglas Stripp* for appellants.

*Madden, Freeman & Madden, James E. Burke* and *John F. Cook* for respondent.

272

CAMPBELL, C.—Respondent brought this proceeding under the Workmen's Compensation Law seeking an award of compensation for the death of her husband, John C. Fitzgerald, alleged to have been caused by an occupational disease contracted while he was in the employ of the appellant, Fisher Body St. Louis Company, Kansas City Division.

The commission heard the claim, awarded compensation to claimant. The employer and insurer appealed to the circuit court, where the award was affirmed. They have appealed.

The evidence shows that claimant's husband was an employee of the appellant Fisher Body St. Louis Company, Kansas City Division, from January, 1929, to May 29, 1934. The employee on the day last mentioned collapsed while in the performance of the duties of his employment. He filed claim for compensation on October 4, 1934. The claim was heard and temporary award made which, on review by the full commission, was affirmed on March 13, 1936, two days subsequent to the death of the employee. (The commission was not advised of the death until after the award was affirmed.)

Claimant on March 27, 1936, in a writing signed by her and filed with the commission, suggested the death of the employee, her rela-

tionship to and her dependency upon him, and prayed that the award of compensation theretofore made be paid to her. Subsequently on June 18, 1936, she filed with the commission formal claim for compensation based upon the ground that she was the widow and dependent of the employee; that the latter's death was caused by a compensable occupational disease contracted in the course of his employment. The commission heard the claim and awarded her $150 medical aid, $75 for medicines, $225 burial expenses, and $13.91 per week for 300 weeks beginning June 1, 1934.

The evidence taken in the hearing of the employee's claim was by agreement introduced in the hearing of the present claim.

After the claim was filed on June 18, further evidence was heard showing that claimant was the widow and dependent of the employee, and that the death of the latter was caused by "tuberculosis induced by silicosis."

The appellants contend that tuberculosis is not and cannot be an occupational disease within the meaning of section 3395, Revised Statutes 1929, as amended by Laws of Missouri, 1931, page 382.

In the case of Evans v. Chevrolet Motor Company, 105 S. W. (2d) 1081, a compensation case, the claimant obtained an award upon showing his disability was due to tuberculosis. The court in affirming the award said:

"What is of most importance upon the question of Evans' right to receive compensation is the fact, as shown by his medical evidence, that his disability is directly attributable to his employment, his continued inhalation of the irritating substance having served to set up a chronic inflammation of the lung tissues of a character to have lowered his resistance to infections of any sort and to have produced a fertile soil for the growth and development of the tubercular bacilli. Moreover, as corroborative of the fact of casual connection between the employment and the disability, it was shown, not only that Evans' health had been good until the time of his exposure to the hazard incident to his employment, but also that his case history disclosed no other factor to account for the lowering of his resistence and the attendant development of the tuberculosis."

In the case of Wolf v. Mallinckrodt Chemical Company, 81 S. W. (2d) 323, the plaintiff sued to recover damages upon the ground he contracted an occupational disease, combined sclerosis, while in the service of the defendant; and that the disease was caused by the condition under which he worked. The court held the plaintiff failed to prove the pleaded case and reversed and remanded the cause, thus in result holding that the law does not say that combined sclerosis is not an occupational disease.

Section 13252, Revised Statutes 1929, construed in that case, provides that an occupational disease is a disease "peculiar to the work" or "incident to such work." There is no such provision in the com-

pensation statute. If the legislature intended that the phrase "occupational disease" used in the compensation law meant disease "peculiar to the work" or "incident to such work" is should have expressed that intention in words as plain as those used in section 13252, *supra.* In the absence of any provision to the effect that an occupational disease under the act is a disease "incident" or "peculiar" to the work it is reasonable to say the legislature intended that an occupational disease, within the meaning of the compensation law, is a disease caused by or directly resulting from working conditions. Especially is this true when we consider that under the established rule the act must be liberally construed in favor of the employee; that doubt respecting right to compensation should be resolved in favor of the claimant. Any other construction would allow an employer to maintain working conditions detrimental to the health of his employees, deprive the latter of any remedy for the wrong and thus thwart the very purpose of the occupational disease amendment.

The appellants say that the employee "had a latent tubercular condition" and that the expert opinion evidence proceeded upon the theory "that the working conditions operated upon this preexisting condition;" that the resulting disease was peculiar to the employee, not peculiar and incident to his occupation.

The employee was a carpenter, worked in the wood department; his work was "fast and quick." Were we to say he had a latent condition, a condition which did not prevent him from working "fast and quick" during a period of years; that the dust in his place of work finally caused the latent condition to become active and result in death; that under such facts the occupational disease amendment does not afford a remedy, then we would place a harsh construction upon the act notwithstanding it is our duty to construe the law liberally in favor of the employee.

It must be remembered the compensation law is substitutional; that an employee under the act has no right which he may assert against his employer because he is injured or contracts a disabling disease in the course of his employment unless such right is given in the compensation law. Hence, according to appellants' theory, the employer could have maintained the working place of the employee in a condition which induced a nondisabling latent disease to become an active and fatal one and neither the employee nor his dependent would have a remedy. Certainly the legislature did not use the words "occupational disease" in such a sense.

However, if an occupational disease under the act is one incident and peculiar to a particular occupation, as appellants contend, the result in the instant case would not be affected thereby for the reason there was substantial evidence showing that the disease which took the life of the employee was induced by and was the natural result of the conditions in his place of work.

The case of Smith v. Harbison-Walker Refractories Co., 100 S. W. (2d) 909, was an action to recover damages based upon the alleged ground that plaintiff inhaled dust containing silica and in consequence thereof contracted the disease of silicosis. In holding the evidence sufficient to sustain plaintiff's case the court said:

"However, it was shown by the evidence that pure silica makes dust poisonous to the lungs; that silicosis is a disease which is a natural and peculiar result of breathing dust which contains silica particles of a certain size, character, and quantity; so it undoubtedly is at least a reasonable inference that silicosis is incidental and peculiar to any work or process which produces and projects into the place of work silica particles of a harmful size, character, and quantity."

It is worthy of note a medical expert testified in that case, "We know tuberculosis will follow silicosis and go rapidly."

No court so far as we are advised has said either in substance or effect that suberculosis when induced by silicosis is not an occupational disease.

The evidence further shows the employee worked from the effective date of the occupational disease amendment for more than two years and eight months at a place in the plant of his employer, 40 to 60 feet from a spraying booth where automobile bodies were sprayed with paint by means of pressure guns; that a fine spray consisting of particles of paint pervaded the employee's place of work in such quantities that the air was foggy with it; that the spray settled on the floor, on stock piles, on employee's clothes and body and formed into a fine red dust; that the employee was not furnished a respirator and in consequence breathed the paint spray and dust into his respiratory system; that each day, soon after beginning work, he would discharge red dust through his mouth and nose. Chemical analysis of the paint used in the plant in February, 1934, disclosed that the paint contained fine particles of silica, iron oxide, aluminum oxide, calcium carbonate and basis lead carbonate. Each ingredient was insoluble in water, and when breathed into the lungs was a mechanical irritant.

Other facts will be stated in the course of the opinion.

The appellants insist the competent evidence was not sufficient to support the award. This insistence is approached from many angles, one of which is that the evidence shows the employee contracted tuberculosis before the effective date of the amendment, September 14, 1931. Employee weighed 175 to 185 pounds, was in excellent health in 1929 and continued to be in good health, active and strong until the latter part of 1933, at which time he began to lose his "pep." From that time he gradually grew worse, lost weight and collapsed while at work on May 29, 1934. He was examined by his employer's doctor at the time he was employed in 1929, and by the physician of the employer each year thereafter. Reports of the examinations were

forwarded to the employer. The latter was duly notified to produce the reports at the hearing before the commission. When called upon in the hearing to produce the reports, one of appellants' counsel said, "apparently they (reports) were mislaid somehow. . . . We are making further effort to dig them up for you. If we can find them, I will be glad to supply them." The reports were not produced. There was no evidence showing that the reports were in fact not available. The employer, not its lawyers, received the reports and it chose to remain silent on the subject. It has been ruled that under such circumstances it will be presumed or inferred that the reports would not support the claim that the onset of tuberculosis was prior to September 14, 1931. [Bobos v. Krey Packing Co., 19 S. W. (2d) 630.]

Undoubtedly the failure to produce the reports or the doctors who made them or account for the failure did not strengthen the defense.

It is reasonable to presume the physicians were competent ones; that they reported to the employer that the employee was physically fit to do the work for which he was employed, else he would not have been employed or retained. There was medical testimony showing tuberculosis was contracted by the employee subsequent to 1931. This point is ruled against appellants.

Appellants contend that there was no competent evidence from which the commission could find that breathing the paint dust caused the employee to contract tuberculosis. Dr. Callahan testified he carefully examined the employee on May 29, 1934, and thereafter treated him until his death; that in his opinion tuberculosis in the employee was caused by the gradual inhalation of paint dust of the chemical constituents of the paint sample; that "suberculosis induced by silicosis" was the cause of death. His testimony was corroborated in part by that of Dr. Buckingham.

Appellants objected to the evidence showing the chemical elements of the paint on the grounds that the sample which was analyzed was obtained in February, 1934, which was after the onset of tuberculosis; that the fact that the paint used in February. contained certain elements was no evidence that the paint theretofore used had the same chemical constituents.

The objection was directed to the order of proof, presupposed that no evidence had or would be offered tending to show that the chemical elements of the paint used prior to the time the sample was obtained had or would be introduced. The evidence was admissible for the reason that breathing the substance contained in the paint from February to May 29, directly contributed to the collapse and death of the employee, and for the reason the evidence shows the paint used prior to February, 1934, was carried through the air, settled in a dust, had the same taste, color, smell and effect upon workmen, caused them to have difficulty in breathing, caused them to cough and their

sputum to become discolored in the same manner throughout the entire period.

The evidence showing the appearance, taste and smell of the paint used prior to the time the sample was obtained was not sufficient to show the precise elements of the paint.

That evidence, standing alone, may have little or no value, but it does not stand alone; it was shown the paint spray when breathed by the employee irritated his lungs in the same manner as they were affected by the spray breathed by him subsequent to February, 1934. It was the effect of the elements breathed into the employee's lungs, not the name of the substances which determines whether or not the evidence was admissible.

In this connection it must not be overlooked the sample contained silica; that silicosis induced tuberculosis and that tuberculosis caused death.

There is another reason sufficient in itself to warrant the reception of the evidence concerning the paint sample and that reason is, there was substantial evidence the employee had silicosis. Of that disease appellants say "silicosis must of necessity be an occupational disease because it can come from nothing but silica taken into the body by inhalation." The employee contracted silicosis because he inhaled silica. If it be true, as some of the evidence shows, that breathing silica during the period from February to May 29 would not have caused silicosis, then it must be true the employee inhaled silica prior to February, 1934.

We deem it unnecessary to determine the insistence of the claimant to the effect that we should take judicial notice that the paint in question contained ingredients insoluble in water, irritating to the lungs of the employee when he breathed them for the reason there was direct evidence that breathing silica induced the fatal malady, and there was no evidence indicating the employee breathed silica in harmful quantities save while at his place of work.

Appellants insist that respondent's claim was not filed within six months after the injury became apparent as required by section 3337 of the act.

The claim was filed within six months after the death of the employee. Section 3337 says that compensation will not be awarded unless claim therefor be filed within six months after the injury *or death*. Respondent could not have maintained a claim until after the death of the employee. She had six months in which to file claim after her right accrued. [Schneiders' Workmen's Compensation Law (2 Ed.), section 379; Wray et al. v. Carolina Cotton and Woolen Mills Co., 172 S. W. 487.]

In the case of Wright v. Maryland Casualty Co., 76 S. W. (2d) 1101, this court said, "that where the question of jurisdiction is in doubt it should be held to be in the commission."

Appellants say the decision in the case of Bolosino v. Laclede-Christy Clay Products Co., 124 S. W. (2d) 581, fully sustains their contentions in the instant case. The claimant in that case sought compensation on the ground he contracted pneumoconiosis, broncho-pulmonary fibrosis and silico tuberculosis caused by breathing dust-ladened atmosphere. The court ruled his evidence, "if believed by the commission," was sufficient to sustain his claim. The evidence for the employer and insurer was to the effect that employee had "no silicosis or pneumoconiosis." The commission denied compensation on the ground that the condition of claimant was not the result of an occupational disease. In other words, the commission believed the evidence of the employer and insurer and disbelieved the claimant's evidence. The finding based as it was on conflicting evidence was conclusive on the court. Thus in the present case the finding of the commission warranted by competent testimony is conclusive on this court. By the same token had the commission found against claimant that finding would be conclusive.

The appellants contend the evidence of the medical witnesses to the effect that tuberculosis is an occupational disease was the statement of a legal conclusion and should be disregarded.

Dr. Callaghan was allowed without objection to testify that he was familiar with what is known as occupational disease, that is, diseases peculiar to occupations; that tuberculosis "is known as an occupational disease peculiar to those occupations in which persons are exposed to breathing paint and paint dust in the form and type" of the paint sample.

Dr. Buckingham, without objection except as to the form of the question which elicited the testimony, was permitted to testify that tuberculosis is an occupational disease.

Dr. Davis, for the appellants, in reply to a question propounded by defendants' counsel, testified that in his opinion "the tuberculosis in question here is neither peculiar or incident to the occupation" of the employee.

Having tried the cause upon the theory that it was proper to show by expert evidence whether tuberculosis was or was not an occupational disease, neither party should now say the evidence on that question has no value.

The appellants in a reply brief filed after the cause was argued and submitted make the point for the first time that the evidence showing that tuberculosis induced by silicosis was the cause of the death of the employee "cannot be considered in this case" because the evidence was introduced in violation of an agreement of the parties. A point made for the first time in reply brief is too late for consideration. [Orchard v. Missouri Lumber and Mining Co., 184 S. W. 1138.] We do not intend to say that the introduction of the evidence was a

violation of any agreement. What we do say is the point is not here for determination.

The appellants have discussed at length the evidence tending to show that the employee did not contract an occupational disease. Evidence unfavorable to the award must be put aside for the reason that it was the province of the commission to find the facts, and the full duty of the court is discharged when it determines whether or not there was sufficient competent evidence to sustain the award. Considering all of the evidence we cannot say there was not sufficient proof to warrant the making of the award.

The foregoing rules all the question presented in the assignments of error and under the heading points and authorities in appellants' original brief. The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.