## Dixie Ice Cream Co. v. Ingels et al.

June 5, 1942.

William A. Minihan for appellant.

Leer Buckley for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This appeal is from a judgment affirming the action of the Workmen's Compensation Board in awarding fifty percent permanent disability compensation to the appellee, Marion Ingels, for an injury found by the Board to have been sustained by him as a result of inhalation of gas. The only question presented is whether there was any substantial evidence that the inhalation of the gas lighted up or reactivated a tubercular condition with which appellee was shown to be afflicted prior thereto.

On September 17, 1939, the appellee was engaged in checking a refrigerator unit and in doing so was, as the result of an accident, exposed to sulphur dioxide in both gaseous and liquid form. He was compelled to inhale this gas for sometime in order to effect repairs. His eyes, nose and throat were irritated by the gas and he became nauseated and began vomiting blood clots and the next day continued, as he says to spit up clots of blood. He says that he tried to work for a few days but was unable to do so and that he has been continuously disabled. Physicians found, upon examination, that he was suffering from tuberculosis.

It is shown that on October 21, 1938, appellee was examined at a clinic in Cincinnati and found to be suffering from tuberculosis—he had lost considerable weight at the time. A physician at that clinic wrote to appellee, advising him of his condition, stating that it was an early infection that would respond to rest and proper treatment. Appellee continued work, however, and did not take treatment. He testified, however, that he was in good health and always able to go ahead and work. This testimony is contradicted to some extent by one of his witnesses, a helper, who said that at times appellee would get tired at the end of the day's work, occasionally drinking at such times and complaining of his health.

Three physicians, testifying for appellee, expressed their opinions that the gas lighted up and reactivated the progress of the tuberculosis, while stating that the progress of the disease might well have been the cause of his condition aside from the exposure to the gas. The Board accepted this theory and, finding that appellee was totally and permanently disabled, attributed fifty percent of the disability to the injury and fifty percent to the pre-existing condition.

It is insisted for appellant that there was no substantial evidence that the inhalation of the gas lighted up a dormant or inactive tubercular condition in appellee. The argument is that it is the uncontradicted opinion of all physicians, those testifying for appellee as well as appellant, that appellee's previous tubercular condition would reasonably and in all probability progress to the point of disability and that such disability might well have been expected to occur before it did, and that the opinions of the physicians testifying for appellee that the gas lighted up a dormant or inactive case of tuberculosis were based on an erroneous history of the case given them by appellee to the effect that he did not have an active case of tuberculosis prior to the inhalation of the gas.

It may be true, as insisted by appellant, that when these physicians made their original diagnoses they had not been given a full and complete history of the case by appellee, but when they testified they were fully aware that appellee had been examined in 1938 and found to be suffering with tuberculosis. Dr. Murray, for instance, said "The inflammation produced by the inhalation of the carbonic gas irritated the tissues and activated the

condition that was probably inactive or lying dormant,'' and again he said, ''My finding is based on the history of the man and the fact that he was continuing in a hard, laborious work with no definite evidence of activity and then the sudden onset following the inhalation of this irritating gas leads me to think was not the usual effect.'' Dr. Tripodi, in expressing the opinion that a dormant case of tuberculosis was lighted up by the gas, said, ''He said he felt perfectly well before that. I had to assume that this thing caused the lighting up of his condition.'' Dr. Tripodi had been informed during the progress of his examination that appellee had been examined and found tubercular in the year 1938.

Thus, these physicians, forming their judgment from appellee's statement that he felt all right and was in good health and had continued in a laborious occupation for approximately a year after it was ascertained he had tuberculosis, and from their information as to the effect of the inhalation of the gas on appellee, expressed the opinion that a dormant or inactive case of tuberculosis was lighted up or reactivated. It thus appears that there was some substantial evidence before the Board to sustain its finding. Were we sitting as a fact finding body, our finding would probably differ from that of the Board, but it is only where there is no substantial evidence having a tendency or fitness to induce conviction that the courts are justified in setting aside awards of the Board.

Appellant relies strongly on American Rolling Mill Co. v. Pack et al., 278 Ky. 175, 128 S. W. (2d) 187, and insists that it is controlling of the present case. We do not so regard it. There the claim was that the inhalation of gas caused tuberculosis. It was held that there was no substantial evidence that tuberculosis was, or could be, caused by the breathing of the gas. In the instant case no physician testified that inhalation of the gas would cause tuberculosis—on the contrary, all physicians agreed that tuberculosis could not be thus caused. Appellee's physicians simply expressed the opinion that a dormant or inactive case of tuberculosis had been lighted up or reactivated. As indicated, there was substantial evidence sustaining the finding of the Board to this effect.

Judgment affirmed.