# Coburn v. North American Refractories Co. et al.

June 25, 1943.

568

E. Poe Harris, Leonard C. Fielder and Davis M. Howerton for appellant.

LeWright Browning and S. S. Willis for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Seymour Coburn died on November 9, 1941, at the early age of twenty-nine years, six months, and eight days, the victim of tuberculosis of the lungs. He had been raised in the country, and, prior to 1936, had never worked in an industrial plant of any kind. In January of that year he went to Ashland and secured employment as a "grinder" with the North American Refractories Company, which was engaged in the manufacture of refractory brick. While sand, containing silica, was not a component part of the bricks manufactured, it was, nevertheless, used by the Company in large quantities to prevent the bricks from sticking to the molds, and later, when set to dry, to prevent the layers from sticking together. During the process of burning, in which sand was again used as a separator, some of it adhered to the edges and sides of the bricks, and many of them

became warped and lost their shape. To reduce them to the proper specifications, the Company maintained a "grinder machine" consisting of two carborundum wheels approximately thirty inches in diameter, operated at high speed by electricity. The over-sized and irregular bricks were gauged and then pressed against the grinding wheels. The machine was located in a shed, and the employees who operated it were known as "grinders."

Coburn continued in this employment until December, 1940, when he was compelled to give up his work on account of ill health. His health had begun to fail during the preceding summer, and when he was finally compelled to discontinue his employment, he consulted his family physician, Dr. Harry J. Stone, who advised him to have an X-ray made and sent a sample of his sputum to a laboratory for examination. The X-ray was made on December 10, 1940, and both it and the examination of the sputum disclosed that Coburn was suffering from pulmonary tuberculosis. Eventually, he was put to bed, where he remained until his death 11 months later. It should here be noted that while the X-ray showed that Coburn was also suffering from silicosis, the death certificate disclosed only one cause of death, namely, pulmonary tuberculosis.

The original petition in this action was filed by Coburn on June 3, 1941. In it he alleged that through the negligence of his employer and its officials in charge of the plant, the individual appellees named in the caption, he had contracted diseases of the lungs and other respiratory organs, not specified, which had permanently disabled him to his damage in the sum of $50,000. Specifically, he charged the defendants with the negligent failure to furnish him with a reasonably safe place in which to work; that the defendants knew, or by the exercise of ordinary care should have known, that the silica dust to which he was exposed by the nature of his work was a dangerous substance, and negligently failed to warn him of the danger from breathing it; and that the defendants failed to provide him with well known and reasonably safe appliances and equipment so as to make his working place safe. By subsequent amendments, certain allegedly negligent acts in handling the dust after it had been deposited outside the grinder room were specified, and the defendants were charged with having violated Chapter 124 of the Acts of 1928, KRS 338.080, 338.090,

and 338.100 (KS sec. 2062f-1 to KS sec. 2062f-6), requiring employers operating wheels or belts coated with abrasive material to provide suction or exhaust systems to carry off the dust. Following plaintiff's death, the action was revived in the name of his administratrix, and by amended petition she elected to sue for his death, alleging that it had been directly and proximately caused by the negligence of the defendants. Answers were filed traversing the material allegations of the petition and amended petitions, and pleading affirmatively contributory negligence, failure of the decedent to use the safety appliances provided for him, assumed risk, and the one year Statute of Limitation. By an amended answer the defendants pleaded that both Coburn and the Company had accepted in writing the provisions of the Workmen's Compensation Act and were operating under it, and that, accordingly, no action for common law damages could be maintained by Coburn or his representatives. A reply completed the issues, and at the conclusion of a lengthy trial, the Court overruled the Company's motion for a directed verdict, but sustained a similar motion on behalf of the individual defendants. The jury, however, found for the Company, and this appeal is from the judgment dismissing the petition.

As grounds for a reversal it is urged by appellant that the Court erred in its fourth, fifth, and sixth instructions to the jury; in rejecting material competent evidence offered by the appellant, and in admitting incompetent evidence offered by the Company; and in directing a verdict for the individual defendants, Leighow and Gartrell.

The record is so large, and the briefs of counsel, though ably prepared, so exhaustive, as to render it impossible in an opinion of reasonable length, either to detail the testimony or attempt an analysis of the cited authorities. The importance of the questions involved, however, has not failed to impress itself upon the Court; and our conclusions with respect to each of them, though briefly announced, have been reached after mature deliberation. With this explanation, we shall proceed to narrate the facts which we deem necessary to illustrate the merits or demerits of the grounds for reversal urged on behalf of appellant, and the sweeping contentions of appellees that the action was unmaintainable in the first instance, and that, in any event, the correctness or incorrectness of the Court's instructions is immaterial

since all of the appellees were entitled to directed verdicts because of the failure of the plaintiff to prove, either that the tuberculosis which caused Coburn's death was caused by the silicosis which he cantracted, or that the silicosis was contracted as a result of the Company's negligence or its violation of statutory requirements.

When Coburn went to work for the Company, the grinder machine was equipped with a fan and suction pipe to draw off the dust. Later a second grinder machine was installed beside the first one, hoods were placed over the wheels, and the shed was converted into a room with two windows and two doors which were left open. Previously, on May 1, 1936, Coburn had been furnished with a respirator, but, after a few weeks, he discarded it because he found it uncomfortable to wear. The sufficiency of the draft and suction apparatus provided by the Company is disputed by the appellant, but, on the whole, the evidence conduces to the belief that it substantially fulfilled the requirements of the statute, at least during the greater portion of the time that Coburn was employed as a grinder. However, when Coburn started to work for the Company, there was no proper hood over the grinder machine, but merely a tin shield arched at the curve of the wheel, and after hoods had been installed, they were frequently pushed back from the wheels to permit the grinding of "hot tops," or handmade bricks of exceptionally large size. According to the testimony for appellant, the fans frequently broke down, and on these and other occasions, the grinder room, though well ventilated, became filled with dust from the grinding, and the conditions were such that the dust constituted a continuing menace to the men's health. Samples of the dust and brick, surreptitiously gathered from the grinder room and other portions of the premises in the summer of 1941, were chemically analyzed by Dr. Emmerich Von Haam, head of the Department of Pathology of the Ohio State University, who testified that he found free silica, or silicon dioxide, in all the samples in particles sufficiently microscopic to pass through the tissues and constitute a danger to those breathing the dust. On the other hand, Dr. C. O. Sappington, physician, engineer, and noted specialist in Industrial Medicine, Occupational Diseases, and Industrial Hygiene, testified for the appellees that the analytical methods employed by Dr. Von Haam were obsolete and inaccurate, and that from analyses, dust counts, and inspections of the Com-

pany's plant made by him in the summer of 1941 and again in January, 1942, his conclusion was that there was "no dust hazard here in these various operations * * * I would base my conclusions on the tests made on each occasion when I was there, and as Dr. Gardner has said:— 'It takes an air of exposure of several hundred million particles of dust of relatively high free silica content, over a long period of years to produce silicosis.' We have here an average of between 150 and 250 millions of particles which come within the range of his statement, but we have a free silica content of less than 2% which makes a great deal of difference on our conclusion. The fact is that a great deal of dust can be breathed, if the free silica content is under 5%. Here it is under 2%, for which no standard amount of dust has been set by various governmental bodies."

This witness further stated that the exhaust or ventilating system at the appellant Company's plant was the best he had ever seen employed in that kind of business. In fact, all of the testimony introduced by appellant which indicated the insufficiency of the apparatus provided and the presence of silica dust in dangerous quantities was contested by witnesses for the appellees; but we deem it unnecessary to discuss the evidence bearing on this dispute, since the testimony showed conclusively that Coburn did contract silicosis while working for the appellant Company, and the issues as to whether the Company complied with its statutory and common law duties to provide him with a reasonably safe place in which to work, and its common law duty to warn him of the dangers attendant upon the inhalation of the dust, were fully and properly, under the conflicting proof, submitted to the jury by the first and second instructions which were tendered by appellant's counsel, and are not complained of. Instruction No. 3 was an instruction on contributory negligence, couched in the usual form, and is likewise not complained of. Instruction No. 4, on assumed risk, however, is attacked, and for that reason we set it forth: "The Court instructs you that when the decedent, Seymour Coburn, entered the employment of the defendant, Company, he assumed all the ordinary risks incident to the employment, and if you shall believe from the evidence that he was caused to contract the disease of silicosis as the result of the ordinary risks of the employment which he had assumed, and not by reason of the negligence of the defendants,

as set out in Instructions No. 1 and No. 2, then the law is for the defendants, and the jury will so find.''

The basis of the attack is that the violation of a statute by a master is not one of the ordinary risks assumed by his servant; but a mere reading of the instruction is sufficient to show that it expressly exempts from its operation ''the negligence of the defendants, as set out in Instruction No. 1 and No. 2,'' which instructions outlined the statutory duties, the violation of which would render appellees liable. Read in connection with instructions No. 1 and No. 2, instruction No. 4 refers only to the ordinary risks of the employment, that is, those risks which are inherent in the business, and do not result from the master's negligence. It is further suggested that since the Company had not availed itself of the ''Silicosis Amendment'' of 1934 to KRS 342.005, KS sec. 4880, permitting employers engaged in certain industries to include the contracting of silicosis among the compensable injuries listed in the Workmen's Compensation Act, it was precluded from pleading ''assumed risk'' as a defense, but an inspection of the statute cited, together with KRS 342.410, KS sec. 4960, which denies to a noncomplying employer ''assumed risk'' and other common law defenses, will be sufficient to show that the penalty was intended to be imposed only upon those employers who failed to accept the mandatory requirements of the Workmen's Compensation Act. Moreover, it is extremely doubtful whether the business in which the appellant Company is engaged is such as would entitle it to avail itself of the ''Silicosis Amendment.''

Instruction No. 5, also attacked by appellant, is in the following language:

''The Court instructs you that it is established by the evidence that the respirator referred to in evidence was furnished by the defendant, North American Refractories Company, to the decedent, Seymour Coburn, and that said decedent failed or refused to use said respirator.

''The Court further instructs you that the failure of the decedent to use said respirator from and after the 12th day of June, 1940, is a bar to any recovery by the plaintiff against the defendants, and for this reason you will find for the defendants, unless you shall believe from the evidence that the death of the decedent was not caused by such failure to use said respirator.''

This instruction was based on that portion of Paragraph 2 of KRS 338.030 which provides that the failure of an employee to use a safety device or safeguard provided by his employer "shall, in the event of his injury, be considered prima facie evidence that his injury was caused by himself." It is a part of the Act of March 20, 1940, which became effective on June 12th of that year, and one of appellant's complaints is that the instruction makes Coburn's failure to wear the mask furnished him an absolute bar to a recovery, whereas, the statute would make such failure only prima facie evidence that his injury was self occasioned. Obviously, however, the instruction is not properly subject to this criticism, since the jury was told that Coburn's failure to use the respirator constituted a bar only in the event the jury believed that his death was caused by such failure. A more serious criticism is that there was no proof introduced by the Company to show that the respirator furnished Coburn was an approved one, or that it was of such design as would accomplish the purpose for which it was intended, whereas, the proof offered by the appellant, but rejected, showed that the respirator in question was inadequate. The propriety of the Court's action in rejecting appellant's proffered testimony respecting the respirator will be discussed later in this opinion. So far as instruction No. 5 is concerned, it is sufficient to say that while, perhaps, it should not have been given, since the proof conclusively showed that Coburn had contracted silicosis prior to June 12, 1940, and could not have been materially affected by his failure to wear the respirator during the short time elapsing between that date and his complete cessation from work, this same state of facts likewise rendered the giving of the instruction harmless. If the respirator was insufficient to accomplish the purpose for which it was designed, Coburn's failure to wear it could not, under any set of circumstances, be said to have caused his death; and no jury hearing the testimony could have believed that his death was caused by his failure to wear the respirator, no matter how adequate, after June 12, 1940, since the harm had already been done. We, therefore, do not believe that appellant was prejudiced by the giving of the 5th instruction.

Appellant's major attack is upon instruction No. 6, which was in the following language:

"The Court instructs you as a matter of law that it is proven that the death of the decedent, Seymour Coburn was directly caused by tuberculosis.

"The Court further instructs you that even though you may believe from the evidence that the decedent contracted silicosis as the direct result of the negligence of the defendants, yet you cannot find for the plaintiff, unless you shall further believe from the evidence that the silicosis contracted by the decedent, if he did so contract it, was the direct, proximate cause of the tuberculosis which caused his death, and unless you so believe you will find for the defendants.

" 'Proximate cause,' as used in this instruction is that which, in a natural and continuous sequence unbroken by any independent responsible cause, produced a certain result, and without which it would not have occurred. Proof that silicosis predisposes to tuberculosis and that the decedent might not have had tuberculosis if he had not contracted silicosis, is not sufficient of itself to establish that the silicosis was the proximate couse of the tuberculosis.' '

The attack is centered upon the concluding sentence of the instruction, appellants insisting that with the addition of that sentence, instruction No. 6 was tantamount to an instruction to find for appellees. Appellees' counsel retort that this assertion of appellant's counsel can be justified only upon the assumption that the sole evidence connecting the death of Coburn with the alleged negligence of the appellees was the testimony that silicosis "predisposed" to tuberculosis, in which event appellees were entitled to a peremptory instruction. With this statement of appellees' counsel we agree. Moreover, we think the instruction was proper since it was calculated to enable the jury to properly distinguish between a state of facts, insufficient under our decision in the case of American Rolling Mill Co. v. Pack et al., 278 Ky. 175, 128 S. W. (2d) 187, 191, to impose liability, and a state of facts which would justify a finding for appellant. Since most of the medical testimony went no further than to establish that silicosis predisposes to tuberculosis, appellees were entitled to have the jury cautioned that such testimony "of itself," which phrase is equivalent to "standing alone," was not sufficient to supply the necessary link in the chain of causation.

While, in view of the ultimate conclusions which we have reached as to the proper disposition of this appeal, it is not necessary that we should pass upon the merits of appellees' argument that they were entitled to directed verdicts, a consideration of the evidence and principles of law upon which that argument is based may prove helpful in illustrating the reasons inducing our belief that the instruction on proximate cause was properly qualified by the addition of the concluding sentence of which appellant so vehemently complains.

The evidence established that tuberculosis is a germ disease, the result of infection with the tubercle bacillus; that the infection is transmitted indirectly or directly from the sick to the well; that it cannot be contracted unless the tubercle bacillus is implanted in the body; and that any condition or disease that lowers the vitality of the individual increases the likelihood of infection. That, on the other hand, silicosis is not a germ disease, and is neither transmissible nor infectious; that it is generally defined as a fibrotic condition of the lungs due to prolonged inhalation and accumulation of minute particles of dust containing free silica; that silica occurs in two forms, "free" and "combined," and that only free silica can cause silicosis; that the injury to the lungs is caused by the chemical action of the silica particle, rather than the mechanical irritation; that to cause silicosis the silica must be present in the air in particles small enough to enter the finer air spaces of the lungs, and that only particles that are less than ten microns in diameter (a micron equals 1/25000 of an inch) are harmful; that the relationship of dust concentration and duration of exposure are important etiological factors; and that the disease requires a long period for its development. Furthermore, the preponderance of testimony was to the effect that Coburn's silicosis was in the first, or, at most, the second of the three or four stages into which the authorities usually attempt to divide it, and was, of itself, not sufficient in intensity to seriously disable him, much less, cause his death.

On this state of facts appellees base their argument that this case is controlled by the principle stated in the Pack case, that a cause which merely "made the soil fertile" for disease germs cannot be regarded as a proximate cause of the ensuing disease. But the Pack case was a proceeding under the Workmen's Compensation Act to recover for disabilities occasioned by tuberculo-

sis allegedly caused by the inhalation of fumes from a pickling vat; and there was no medical testimony that inhalation of the fumes caused the claimant's tuberculosis, or did more than irritate and inflame the lung tissue and the mucous membrane of his throat and mouth. There was no proof that a large majority of those persons who were exposed to the fumes developed tuberculosis. In the present case the medical testimony, including that introduced by appellees, established that while only 1%, approximately, of the population contracted tuberculosis, from 50% to 75% of those persons who were afflicted with silicosis subsequently developed pulmonary tuberculosis. Moreover, appellant's witness, Dr. E. C. Smith, testified that "the silicosis was the thing that enabled the tubercle bacilli to take hold and become active." Dr. George K. Mahl testified that "silicosis causes a fibrosis in the lung tissue which makes the subject very prone to the development of tuberculosis. In fact, the fibrosis which is caused in the lung tissue is just a fertile bed for the multiplication of tubercle bacilli, the tuberculosis germ." Dr. E. C. McGehee testified that "silicosis lays the foundation for lower resistance, and tuberculosis germs being ever present, it is usually secondary, usually follows silicosis." Dr. T. J. Thompson, in response to the question, what, in his opinion, caused Coburn's death, said: "I think that it was a combination of the two—silicosis and tuberculosis." And again: "The immediate cause was tuberculosis in connection with silicosis. One helped the other and hurried it along." Dr. J. C. Hall testified that the combination of the two diseases is fatal. Dr. Von Haam testified "It (silicosis) is a fatal disease. Most individuals die of tuberculosis who have it." In a book compiled by Sir William Jameson, Dean of the London School of Hygiene, introduced in evidence by appellees, it is said: "in a large majority of cases the silicotic lung is invaded by the tubercle bacilli. Kettle, who investigated the relationship between silicosis and tuberculosis infections, concluded that silica exerted some specific action on the growth of tubercle bacilli in the lungs." In a statement reported in the proceedings of the National Silicosis Conference on Medical Control of Silicosis, Dr. LeRoy U. Gardner, the noted head of the Saranac Laboratories, said: "At least 75% of the human beings who develop silicosis die of tuberculosis, which may make its appearance at any stage of the disease." In his deposi-

tion taken by appellees, he testified that, although there was no direct causal relationship between the two diseases, there was a "contributory" causal relationship. He also reaffirmed his opinion expressed in an article published in 1934 by the American Medical Association that most patients with silicosis die of complicating tuberculosis.

Counsel cites numerous cases from other states, for the most part arising under Workmen's Compensation Statutes, and, in many instances, involving diseases "lighted up" by, or contracted following accidentally inflicted traumatic lesions. The more important of these are:

For appellant: Milwaukee Malleable & Grey Iron Works et al. v. Industrial Commission of Wisconsin, 239 Wis. 610, 2 N. W. (2d) 197; Golden v. Lerch Bros., Inc., et al., 203 Minn. 211, 281 N. W. 249; Leonard v. Fisher Body Co., St. Louis Court of Appeals, Missouri, 137 S. W. (2d) 604; Fitzgerald v. Fisher Body St. Louis Co., 234 Mo. App. 269, 130 S. W. (2d) 975; Cishowski v. Clayton Manufacturing Co., 105 Conn. 651, 136 A. 472.

For appellees: Migliaccio v. Public Service Railway Co., 101 N. J. L. 496, 130 A. 9; Id., 102 N. J. L. 442, 132 A. 923; Prouse v. Industrial Commission, 69 Colo. 382, 194 P. 625; O'Connor v. Pillsbury Flour Mills Co., 197 Minn. 534, 267 N. W. 507.

Cited from this Court, and likewise, in many instances, lacking in relevancy, are the following:

For appellant: Warfield Natural Gas Co. v. Clark's Adm'x, 257 Ky. 724, 79 S. W. (2d) 21, 97 A. L. R. 971; Dixie Ice Cream Co. v. Ingels, et al., 291 Ky. 39, 163 S. W. (2d) 20; Louisville & Nashville Railroad Co. v. Simralls' Adm'r, 127 Ky. 55, 104 S. W. 1011; Bannon v. Fox, Adm'r, 199 Ky. 262, 250 S. W. 966; Louisville & Nashville Railroad Co. v. Wright, 183 Ky. 634, 210 S. W. 184, 4 A. L. R. 478; Louisville & Nashville Railroad Co. v. Gilliland, 220 Ky. 431, 295 S. W. 422, 53 A. L. R. 386; Cincinnati, N. O. & T. P. R. Co. v. Perkins' Adm'r, 177 Ky. 88, 197 S. W. 526.

For appellees: Setter's Adm'r v. City of Maysville, 114 Ky. 60, 69 S. W. 1074; Louisville & Nashville Railroad Co. v. Keiffer, 132 Ky. 419, 113 S. W. 433; Logan v. Cincinnati, N. O. & T. P. Ry. Co. et al., 139 Ky. 202, 129

S. W. 575; Griffin v. Chesapeake & Ohio Ry. Co., 169 Ky. 522, 184 S. W. 888; Dunn v. Central State Hospital, 197 Ky. 807, 248 S. W. 216; Gaines' Adm'x v. City of Bowling Green, 235 Ky. 800, 32 S. W. (2d) 348; Spencer's Adm'x v. Number Four Superior Coal Co. et al., 228 Ky. 799, 16 S. W. (2d) 168; Stacy et al. v. Williams, 253 Ky. 353, 69 S. W. (2d) 697; Wigginton's Adm'r v. Louisville Railway Co. et al., 256 Ky. 287, 75 S. W. (2d) 1046; George T. Stagg Co. v. O'Nan, 286 Ky. 527, 151 S. W. (2d) 51; Kentucky Utilities Co. v. Hammons, 284 Ky. 437, 145 S. W. (2d) 67; American Rolling Mill Co. v. Adkins, 279 Ky. 234, 130 S. W. (2d) 69; Cincinnati, N. O. & T. P. Ry. Co. v. Perkins' Adm'r, 177 Ky. 88, 197 S. W. 526, (Second Appeal) 192 Ky. 207, 235 S. W. 776.

As before stated, limitations of space will not permit an analysis of the cited cases. Moreover, we have not found them very helpful in applying the generally accepted rules for determining what may or may not be considered proximate causes of an event. However, we have concluded that neither reason nor justice demands that a litigant should be required to prove that which is hidden from exact observation, and hence is impossible to prove in the literal sense of that term, in order to recover for injuries which, according to the experience of mankind, usually, that is, in the majority of observed instances, result from a given and provable antecedent cause for which the opposing litigant is responsible. In our opinion the proof for appellant that a majority of the individuals who contract silicosis subsequently develop pulmonary tuberculosis and die of it, was sufficient to justify the Court in submitting to the jury for determination the question whether Coburn's silicosis caused the tuberculosis, which, admittedly, caused his death, but that it was proper that the Court should qualify the instruction on proximate cause by admonishing the jury that "proof that silicosis predisposes to tuberculosis, and that the decedent might not have had tuberculosis if he had not contracted silicosis, is not sufficient of itself to establish that the silicosis was the proximate cause of the tuberculosis."

The evidence, the rejection of which appellant urges as a ground for reversal, consisted of portions of the proffered testimony of Drs. Hayhurst and Von Haam. That of Dr. Hayhurst, an eminent authority on occupational diseases and industrial hygiene, was to the effect that the respirator furnished Coburn, because of the ab-

sence of identifying marks, did not appear to have been approved by the Bureau of Mines, or any other organization, and that he doubted that, if subjected to tests, it would prove sufficient to accomplish its purpose because of the smallness of the inlet air area and its consequent tendency to accumulate dust and moisture. It is stated in the briefs of counsel that the Court rejected this testimony, because it had not been shown that the respirator which the witness had examined and offered to file in evidence was the identical respirator furnished Coburn by the Company. If so, the Court's ruling was erroneous, since a stipulation signed by counsel for the respective parties was to the effect that the respirator "issued" to Coburn by the Company was given to one of appellant's counsel "a short time prior to March 1, 1941," and that he kept "said" respirator "in his exclusive possession until the 1st day of November, 1941, at which time" it was delivered to Dr. Emery R. Hayhurst at Columbus, Ohio. But, though erroneous, we do not regard the exclusion of this evidence as prejudicial. Among our reasons for this conclusion are those outlined in discussing the propriety of instruction No. 5. Moreover, Dr. Hayhurst's testimony showed that he had not subjected the respirator to the tests which he apparently regarded as necessary to determine its sufficiency. Furthermore, Coburn did not testify that the respirator was insufficient to accomplish the purpose for which it was designed, or that any suspicion on his part that it would not prevent him from inhaling the dust caused him to discard it.

The rejected, but avowed, testimony of Dr. Von Haam was that an analysis of the lungs of Marion Fisher, a co-worker of Coburn's on the grinding machine, showed that Fisher also had contracted silicosis and tuberculosis, from which he died, and that the silicosis preceded the tuberculosis. In support of their argument that the Court erred in excluding this testimony, appellant's counsel cite the Pack and other cases in which the Court pointed to the noninjury of others who had inhaled the noxious gas or substance, the inhalation of which had, allegedly, caused complainant's injury or disease, as evidence that its inhalation was not the causative factor. Clearly, it would have been competent to prove the prevalency of silicosis among appellee's employees prior to the contraction of that disease by Coburn, since such evidence would tend to show that the

Company had notice of the existence of dangerous conditions; but it was not definitely shown when Fisher contracted silicosis or tuberculosis, and we gather from the intimations which have crept into the record and the statements in briefs of counsel that the several other "grinders" who contracted silicosis at the Company's plant developed their symptoms of the disease at approximately the same time that Coburn did. There was not sufficient proof as to the similarity of the conditions under which Fisher and Coburn worked, or that their ages, habits, or opportunities of contracting silicosis or tuberculosis elsewhere were the same, to render the testimony competent under any rule of evidence with which we are acquainted. Moreover, the admitted testimony showed conclusively that Coburn had contracted silicosis while employed at the appellant Company's plant, and proof that Fisher had contracted it would have added nothing to appellant's case, since none of the "grinders" wore the respirators which the Company furnished them. From the medical testimony it is clear that the fact that Fisher subsequently developed tuberculosis could not, standing alone, be considered proof that Coburn's tuberculosis was caused by his previously contracted silicosis. We therefore conclude that even if the excluded testimony was competent, its exclusion was not prejudicial to appellant, since he obtained the full benefit of the testimony that the great majority of persons who contracted silicosis subsequently developed tuberculosis.

The testimony admitted over the objection of appellant, and of which appellant complains, was that of Dr. Sappington heretofore referred to. The basis of the complaint is that conditions at the plant when Dr. Sappington made his dust counts and inspections in July, 1941, and January, 1942, were not the same as they were during the time Coburn was employed there. But this argument overlooks the fact that the Court had admitted testimony of Dr. Von Haam, for appellant, that he had made his analysis of the dust from the grinding machines from samples deposited in the summer of 1941, and that there was testimony offered by appellees showing that conditions in the grinding room, so far as the character and quantity of dust generated by the grinding process was concerned, were substantially the same as they were during Coburn's employment. In cases of this magnitude, especially where the conditions giving

rise to the claimed injuries and the nature of these injuries are obscure, the testimony, if the truth is to be ascertained, must be allowed to take a wide range. We cannot say, either that we regard the testimony complained of as incompetent, or its admission prejudicial to appellant's substantial rights.

Since the jury found for the appellee Company, and we have found no errors in the Court's rulings sufficient to justify a reversal, it is unnecessary that we determine whether the appellees, Leighow and Gartrell, were entitled to the directed verdicts given in their behalf. The same considerations dispense with the necessity of ruling upon appellees' contentions that there was not sufficient evidence of negligence or of statute violation to warrant the submission of the case against any of them, and that a common law action was unmaintainable in any event because the Company and Coburn had elected to operate under the provisions of the Workmen's Compensation Act. It is apparent, however, from the statements of counsel that other similar actions are pending, and it is, therefore, not amiss for us to say with respect to these contentions:

(1) We do not think that the proof for appellant shows acts or omissions on the part of the individual appellees which would render them personally liable. Coburn admitted that he knew that the respirator was to protect his lungs against the dust; and there was much evidence indicating that at least good faith efforts had been made by the Company to comply with the statutes requiring the installation of draft and suction apparatus to remove the dust. American Jurisprudence, Vol. 13, pp. 1023 to 1025, sec. 1092; Aubrey's Adm'r v. Stimson, 160 Ky. 563, 169 S. W. 991, L. R. A. 1915C, 874; Dudley v. Illinois Central Railroad Co., 127 Ky. 221, 96 S. W. 835, 13 L. R. A., N. S., 1186, 128 Am. St. Rep. 335; Cincinnati, N. O. & T. P. Ry. Co. v. Robertson, 115 Ky. 858, 861, 74 S. W. 1061.

(2) What we have heretofore said in discussing the issues submitted by instructions No. 1 and 2 is sufficient to indicate our disagreement with appellees' contention that they were entitled to directed verdicts on the ground that there was not sufficient proof of negligence or violation of statutory requirements to take the case to the jury on those issues.

(3) The opinion of this Court in the recent case of Kentucky Stone Co. v. Phillips et al., 294 Ky. 576, 172 S. W. (2d) 216, squarely holds that injuries to the lungs sustained as the result of the inhalation of emery dust, unless it is the result of an accident, that is, an unanticipated and undesigned event occurring upon a specific date or within a limited and identifiable period, is not compensable under the provisions of the Workmen's Compensation Act.

Judgment affirmed.

Whole Court sitting.

Chief Justice Fulton, and Judges Thomas and Cammack, dissent from so much of the opinion as holds that the instruction on proximate cause was proper, and that the instruction on the decedent's failure to wear the respirator furnished him was nonprejudicial.